WILLIAM HENDERSON, Claimant, *v.* THE STATE OF NEW
YORK.

## Claim No. 1462-A

(State of New York, Court of Claims, March, 1921.)

Court of Claims — jurisdiction — failure to file notice of intention
    in time — claim dismissed — claims — Code Civ. Pro. § 264.

   A failure to file with the clerk of the Court of Claims and
the attorney-general a written notice of intention to file a claim
under a contract with the state lunacy commission for building
construction relating to a hospital, as required by section 264
of the Code of Civil Procedure, is a jurisdictional defect which
precludes a determination of the claim on its merits whether
otherwise valid or not.

   Where, therefore, the claim herein, if it accrued at all,
accrued previous to August 19, 1913, the filing of a notice of
intention on February 19, 1914, comes too late, and the claim
must be dismissed for want of jurisdiction.

CLAIM for balance due upon a building contract.

Francis J. Kuerzi, for claimant.

Glenn A. Frank and Harry W. Ehle, deputy attor-
neys-general, for state of New York.

CUNNINGHAM, J.   On May 12, 1911, the state,
through the state commission in lunacy, entered into
a written contract with the claimant by which the lat-
ter was to do the work and furnish the materials
required in certain building construction at the Cen-
tral Islip State Hospital for the sum of $7,000.   The
contract was made under the authority of chapter 507
of the Laws of 1910.   The claimant completed per-
formance of his obligations under it in September.
1911.

   On July 7, 1911, and previously, the claimant bor-

rowed sums aggregating $1,400 from one Samuel K. Kellock, and on that date made and delivered to Kellock a written assignment of all the money due and to grow due under the claimant's contract with the state, the assignment containing a clause authorizing Kellock, as the claimant's attorney, irrevocably in claimant's name, to demand and receive such payments and to receipt for them.

The claimant's. contract provided that he would not transfer or assign any of the money due to him under the contract without the consent in writing of the state, and that in the absence of such consent no claim of payment should exist in favor of any person to such money.

On or before December 15, 1911, the claimant completed the repayment to Kellock of the loan above mentioned in full. On August 31, 1911, the state paid to the claimant on account of his·contract the sum of $4,421.55.

On July 3, 1912, the state architect issued a certificate for final payment. on the contract in the sum of $721.66, the latter sum being arrived at by deducting from the total amount of the contract the payments previously made, various deductions for credits to which the state was entitled, and $1,620, as liquidated damages at $10 a day, for 162 days' alleged delay in completing the contract: A voucher with an advance receipt attached was forwarded to the claimant for execution, the voucher describing the sum of $721.66, as the total and final balance due and payable to the claimant on the contract. The claimant refused to execute the receipt and retained the voucher until July 3, 1913, when, after being assured by certain state employees in the hospital commission that he would not prejudice his claim for the sums which had been deducted by the state, he executed the receipt and

delivered the voucher to the commission, demanding at that time, by letter, payment of the balance which he claimed. In response, he received a letter from the treasurer of the commission under date of July 7, 1913, informing him that payment of this voucher for $721.66 had been made in February, 1913, to Samuel J. Kellock as assignee. The facts are: That on July 18, 1912, without claimant's knowledge, Kellock had filed in the office of the state comptroller the assignment made to him by the claimant, and on February 1, 1913, the treasurer of the commission had executed a duplicate of the certificate and voucher above mentioned; that the duplicate voucher was receipted by " Samuel K. Kellock, Claimant, Assignee of William Henderson," and on February 5, 1913, check for $721.66 was issued by the commission to Kellock, as assignee of the claimant, and Kellock collected it, no part of it ever reaching the claimant.

In response to the letter of July 7, 1913, from the treasurer of the commission, the claimant on July 9, 1913, wrote to the latter informing him that the loan for which the assignment to Kellock had been made, had been fully paid, and notifying him to pay no more money on the contract to Kellock, or to anyone else, without first informing claimant.

On July 18, 1913, the state architect advised the commission that the enforcement of the penalties which had been asserted by the commission, was not justified. On July 21, 1913, Kellock executed a power of attorney to some one, whose identity has not been established, to collect from the commission all money due or to become due from it to Kellock, to receipt for it and to sign, indorse and deposit the check received in payment. On July 25, 1913, the commission asked the attorney-general for an opinion as to the validity of the alleged penalty, and that official on

Court of Claims, March, 1921. [Vol. 115.

July 28, 1913, advised the commission that a substantial sum could not be deducted from this contract under the guise of liquidated damages. Thereupon, on August 5, 1913, the commission, by resolution, authorized the state architect to issue a " special order " in full settlement of the contract, for $1,588, being the above-mentioned sum of $1,620, less a deduction of $32 with which we are not concerned. The secretary of the commission on that day notified the superintendent of the hospital to forward estimate in this amount and voucher " in favor of William Henderson," adding: " It will not be necessary to have Henderson's receipt attached to the voucher as he has assigned his claim to another. The same is filed with the State Comptroller." On the same day, August 5, 1913, the state architect issued a " special order " with a final certificate for $1,588 to William Henderson. On the following day a voucher was made under the special order and certificate to " Samuel J. Kellock, Assignee of William Henderson," certified by the steward of the hospital and receipted August 7, 1913, by " Samuel R. Kellock, Claimant, Assignee, by George F. Kelly, Atty." Upon this voucher; under date of August 7, 1913, the treasurer of the commission, for the state, drew a check for $1,588, to the order of Samuel J. Kellock as assignee of the claimant. George T. Kelly is an attorney at law, and a former member of assembly, of Albany. He had obtained, in some unexplained manner, the power of attorney last mentioned made by Kellock, and the name of the attorney named in the instrument having been erased by someone, Kelly inserted his own, and on August 8, 1913, presented and filed the document so altered with the treasurer of the commission, and received from him the check last mentioned, and indorsed it " Samuel K. Kellock, Assignee, George T.

Kelly, Atty.'' Kelly used the check, obtained the proceeds and, so far as it appears, converted the money to his own use. In any event, no part of it reached the claimant.

Kelly was a witness under subpœna, and testified most reluctantly. He declined to say what became of the money obtained on the check, on the ground that it might tend to incriminate him. Several other questions were unanswered by Kelly on the same plea. It also appeared on the trial that the letter from claimant to the treasurer of the commission, under date of July 9, 1913, was missing from the files of the commission.

The claimant was unaware of the payment to Kelly, and of all the above-mentioned events subsequent to July 9, 1913, until December 11, 1913, when the state comptroller, by letter, informed the claimant's attorney that payment had been made on August 8, 1913, '' to Samuel K. Kellock '' under the assignment.

Notice of intention was filed by the claimant on February 19, 1914, and this claim was filed on March 21, 1914.

Discrepancies in middle letters of names of persons evidently were inadvertent and of no importance.

The facts disclose a fraud, amazing and rarely paralleled in effrontery. Not less astounding than the fraud itself, is the fact that the administration of the criminal law in this state permitted the Statute of Limitations to run against the offences involved without the visitation of any punishment upon the perpetrators. Kelly — and perhaps others concerned — is a member of the bar. It is unlikely that the attorney-general, cognizant as he is of the fact, will permit the matter to slip into oblivion. The Appellate Division has jurisdiction of the appropriate inquiry. Of course, this tribunal is impotent in that respect.

The determination of this claim raises several interesting and novel considerations, a solution of the first of these being determinative of the case. Section 264 of the Code of Civil Procedure provides: '' No claim other than for the appropriation of land shall be maintained against the state unless the claimant shall within six months after such claim shall have accrued, file in the office of the clerk of the court of claims and with the attorney general * * * a written notice of intention to file a claim against the state,'' etc.

A failure to comply strictly with this statutory provision is a defect which is jurisdictional, prevents a determination of the claim on its merits, and requires its dismissal. *Buckles* v. *State of New York,* 221 N. Y. 418; *Butterfield* v. *State of New York,* Id. 701. It is clear that, if the claim did not accrue within six months prior to February 19, 1914, when notice of intention was filed, this court has no jurisdiction of it, whatever its merits otherwise. Our essential and necessary inquiry, therefore, is simple and confined to a narrow field: Were any acts done or performed, or did any facts transpire within the period indicated, which constituted an accrual of the claim? The only occurrence affecting the claim in any respect during that period, was the discovery by claimant on December 11, 1913, through correspondence with the state comptroller, of the disbursement of the sum of $1,588 to Kellock, or to Kelly ostensibly representing the latter, and later, the acquisition by the claimant of evidence with which to establish that transaction. Obviously, unless this discovery and acquisition of facts constituted an accrual of the claim, the claim did not accrue within six months prior to the filing of the notice of intention, irrespective of whether it accrued previously or not.

The payment to Kelly, which was the last occurrence of any sort, other than such discovery and acquisition of evidence, was made on August 8, 1913, several days more than six months previous to the filing of the notice of intention. The claimant's attorney evidently recognizes this difficulty. He argues that the claimant had six months after the discovery of the allowance and payment to the wrong party in which to file his notice of intention. He calls to our attention no New York decision to that effect, contenting himself with the argument that such is the rule between individuals in cases of fraud. The principle which evidently claimant's counsel has in mind, has its authority in an express statute, which provides a six-year period of limitation in "Any action to procure a judgment on the ground of fraud," and then continues, " The cause of action, in such a case, is not deemed to have accrued, until the discovery, by the plaintiff, or the person under whom he claims, of the facts constituting the fraud." Code Civ. Pro. § 382, subd. 5. Of course, this claim is not to procure a judgment other than for a sum of money; nor is it a claim on the ground of fraud. Therefore, the statute and principle involved, have no application here. This claim is in contract. If it were not, this court would have no jurisdiction of it, in the absence of a statute waiving the state's exemption from liability. *Smith* v. *State of New York,* 227 N. Y. 405. Being in contract, the statute ran against it from the moment that a claim could have been maintained by the claimant. 1 Wait Pr. 236; *Greenwood* v. *Judson,* 109 App. Div. 398; *Matter of Goss,* 98 id. 498; *Cary* v. *Koerner,* 200 N. Y. 253. Clearly, therefore, this claim, if it accrued at all, accrued previous to August 19, 1913. This conclusion requires its dismissal.

Court of Claims, March, 1921.          [Vol. 115.

We may advert briefly to other questions presented by the facts, although a determination of the claim does not necessitate their solution. It now is contended by the claimant that all payments made by the state upon the authority of his assignment to Kellock, were invalid because of the contract provision to which we have referred, prohibiting such transfer or assignment without the consent in writing of the state, and that in the absence of such written consent, payments made by the state to the assignee, avails the state nothing. We are not impressed by this argument. The contractual provision was inserted solely for the protection and benefit of the state. If the latter waived the requirement and recognized the transfer by making payment pursuant to its terms, that waiver affords no basis for action against the state. The claimant now is in no position to repudiate his own assignment, made by him without the consent in writing of the state, on the ground that the state waived the provision which existed solely for its benefit.

Also, it is entirely clear to us that the payment by the state of $721.66 to Kellock, on February 5, 1913, constituted a discharge and payment *pro tanto* on the contract, the payment having been made before notice to the state of the alleged invalidity of the assignment and revocation of its power of attorney. If the state had the right to recognize the assignment, payments made under it, in the absence of notice of its revocation or invalidity, protect the state and discharge the latter's obligation to the extent of such payments.

The state argues that the assignment and power of attorney to Kellock were irrevocable and consequently, that all payments made to the assignee were valid, including payment made after notice of the alleged revocation. Of course, if the state be correct

in this contention it is a reason why the claim should fail *in toto*. However, we refrain from consideration of that question, disregarding, for the purpose of the discussion, the state's position in this respect.

The state contends very earnestly that the alleged claim never has accrued at all. Its position, in substance, is that it never has been rejected. The statute provides that this court " Has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination except where the claim is founded upon express contract and such claim, or some part thereof, has been rejected by such tribunal or officer." Code Civ. Pro. § 264.

This claim is one founded upon express contract and is submitted by law to another officer or tribunal for audit. The Insanity Law, section 65, provides in part: "All payments on contract or special orders, shall be made on the certificate of the State Architect, approved by the Commission as the work progresses or the purchase of materials is made and upon bills duly certified."

Consonant with these statutory provisions it is certain that this court has no jurisdiction of the claim unless it has been rejected previously by the appropriate officers. It is equally true that there has been at least one submission and rejection of all that part of the claim in excess of the sum of $721.66. This rejection was accomplished on or about July 3, 1912, when a purported final audit and determination of the claim was made by the state architect and the commission in the sum of $721.66, as full and final payment. That action, of course, involved a rejection of all claims and demands under the contract in excess of that sum. This audit and rejection, however, while sufficient as such to confer jurisdiction at that time upon this court, is of no avail to the claimant now

because the notice of intention was not filed until more than eighteen months thereafter. As we have pointed out, delay of that extent is fatal. Nevertheless, the fact remains that on or about July 3, 1912, there was an audit and rejection.

But that was not all. It is evident that subsequently there was a resubmission of the claim in the sum of $1,588, to the state architect and the commission. It would seem to be immaterial whether this was due to the demand contained in the claimant's communication to the treasurer of the commission under date of July 3, 1913, to the initiative of the state, or to extraneous promptings. It is apparent that the proceedings taken on or about August 5, 1913, and August 7, 1913, amounted to resubmission and reaudit of the balance of the claim. It seems to us that the procedure taken did not amount to a rejection of the claim, but on the contrary, to an approval and allowance of it, payment not being made by the disbursing officer to the person entitled to receive the money. In short, it seems that the claim involved in this litigation has been audited and approved, but not paid.

In any event, the claim, whether valid otherwise, or not, must be dismissed, because the notice of intention was not filed in time. It is possible that another judicial tribunal or the legislature may afford relief to the claimant, but it is certain that this court cannot.

ACKERSON, P. J., concurs.

Claim dismissed.